EFFRON-KUSHNER & COMPANY, Appellee, v. AMERICAN RAILWAY EXPRESS COMPANY, Appellant.

**EVIDENCE: Best and Secondary—Testimony of a Negative.** A witness may be permitted to testify that books kept by him (and not produced in court) do *not* contain a certain entry, when the absence of such entry is not the basis of a recovery,—when such testimony bears only incidentally on the main issue.

**NEW TRIAL: Misconduct of Counsel—Curing Error.** Improper argument in a jury trial is not necessarily ground for new trial, especially when promptly rebuked by the court.

**EVIDENCE: Burden of Proof—Receipts.** A receipt is conclusive until overthrown by the giver by a preponderance of the evidence.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

MAY 15, 1923.

ACTION to recover damages for the loss of a sack of furs which was delivered to the express company for transportation and delivery to plaintiff. The jury returned a verdict for the plaintiff, and the defendant appeals.—*Reversed.*

*Carl F. Jordan,* for appellant.

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellee.

FAVILLE, J.—The appellee is a firm engaged in buying and selling furs in the city of Cedar Rapids. The appellant is a common carrier. On or about January 9, 1920, two sacks of furs were delivered to the appellant at Oskaloosa, for transportation and delivery to the appellee at Cedar Rapids. The contention of the appellee is that one of said sacks of furs was never delivered to it. The appellant's answer is a general denial. One sack contained skunk skins, and weighed about 150 to 170 pounds. The other, being the one in question, contained muskrat skins, and weighed about 37 pounds. Appellant's agent at Oskaloosa received and receipted for the sack of furs in question on January 9, 1920, and said sack was forwarded under waybill

No. 527381. January 9, 1920, was Saturday. The appellant traced said shipment between said two points, and the evidence shows that the sack of furs was in Cedar Rapids in the possession of the appellant on January 10th. The question of fact in the case is whether or not the appellant delivered said sack to the appellee. The undisputed evidence shows that, on Sunday, January 10th, the appellant's delivery man delivered certain sacks of furs to appellee. When the said furs were so delivered, the appellee's employee in charge of its place at the time signed a receipt for the merchandise so delivered. Omitting the abbreviations and hieroglyphics thereon, which may be more or less unintelligible to the average layman, the said receipt recites that the appellee received from appellant, on January 10, 1920, ''6 sax furs, weight 100.65, 30.120, 37.113.'' It is the appellant's contention that the sack of furs in question is the one identified in this receipt as weighing 37 pounds. It also appears from the evidence of the appellee that it received a total of thirteen sacks, or bundles, of furs on Sunday forenoon, January 10th. The testimony shows that the appellee's custom is not to check furs that are received on Sunday as they come in, but that this is done generally the next day, or the day following. It is appellee's contention that the receipt to the delivery man was signed at the time the furs were delivered, but before the same had been checked over by the appellee. The place of business of the appellee is closed at noon on Sunday. The furs are left in its building, and remain unchecked until some time on Monday or Tuesday following. Appellee's claim is that it received, all told, from various sources, on Sunday, only thirteen bundles, and that, when these were subsequently checked up, on Monday, the particular sack in question was not among said bundles.

I. It is contended that the court erred in the admission of testimony in regard to the checking of the bundles received by the appellee. A member of appellee's firm testified as follows:

''We did not receive a shipment of furs in controversy from Bernstein of Oskaloosa, and I know we did not, because, if they had come in, we would have checked them in, and have our records fixed in such a way that you would know they came from Oskaloosa, and we would not be short the sack of furs. We

enter our furs into a stock book, and all our hides. The book-keeper has charge of that stock book.''

The bookkeeper of appellee was called as a witness, and testified that she kept a record of the goods received by the appellee in the stock book, which was made up from slips which were presented to her, and that she made a record of each invoice that was brought to her; and, over objection, she was permitted to testify that she never entered this particular sack of furs in the stock book of the appellee. The appellee testified that the books of the firm show where all of the thirteen bundles which they claim to have received, came from.

1. EVIDENCE: best and secondary: testimony of a negative.

Appellee's counsel asked the bookkeeper the following question:

''You may state whether or not you ever entered this particular bag of furs in the stock books there for the Effron-Kushman Company.''

The objection was that the books themselves were the best evidence as to what was entered in them. The objection being overruled, the witness answered, ''No, I never did enter it.''

Appellant insists that it was error for the court to permit the witness to testify that the appellee's books did not show the entry therein of the particular sack of furs in question. The books were not produced in court.

The appellee was not seeking to establish a right to recover by reason of any entry in its books of account. The reference to the books was solely an item of evidence on the part of the appellee in its claim that it did not receive the sack of furs in question. The fact that its books, kept in the ordinary course of business, failed to disclose the entry of such a sack was an item of evidence, and a circumstance proper to be considered by the jury in determining the ultimate question as to whether or not the appellee did receive the particular sack in question. The appellee was offering the testimony solely for that purpose, and not seeking any recovery because of any account that its books contained. It was in the nature of negative testimony. We do not think that the court erred in overruling the appellant's objection to this testimony, under the facts disclosed by the record.

II. Appellant complains of the conduct of appellee's counsel in argument to the jury. It appears that the attorney for the appellant excepted to a statement by counsel for the appellee during argument. The argument does not appear to have been taken down by the shorthand reporter. An affidavit attached to the motion for a new trial states that counsel for appellee, in arguing the case, stated, in substance, as follows:

2. New trial: misconduct of counsel: curing error.

"These furs may have been delivered at the station of the defendant in Cedar Rapids, but they were never delivered from the station to the plaintiff's place of business. They were probably stolen. You have all read in the papers that three drivers of the defendant have been arrested for stealing express packages."

No counter-affidavit is filed in regard to said matter. In ruling on the objection to said argument, the court said:

"In response to the objection of the counsel for the defendant, the court desires particularly to say to the jury that there has been no evidence of any sort or kind introduced in this case before you that refers to misconduct on the part of the American Express Co., and you are cautioned that you must not take that into consideration in arriving at a verdict in this case."

This line of argument was improper, and was entirely outside of the record, and should not have been indulged in by counsel. Matters of this kind are, however, largely within the discretion of the trial court, and we are not disposed to interfere, unless an abuse of such discretion clearly appears. In this instance, the trial court ruled promptly, and clearly admonished the jury in regard to said matter. The trial court again had this matter before it on a motion for new trial, and overruled the same.

In view of all of the circumstances surrounding the case, we do not think there was such a clear showing of an abuse of discretion on the part of the trial court in this matter as requires a reversal of the case on this ground.

III. Appellant contends that the trial court should have sustained its motion for a directed verdict, on the ground that the evidence shows without conflict that the furs in question were duly receipted

3. Evidence: burden of proof: receipts.

for by the appellee, and that there is no sufficient evidence in the record to contradict the recitals of said receipt.

It is, in effect, conceded, both in the written and oral arguments, that the receipt offered in evidence refers to the identical sack of furs in controversy. Appellee contends, however, that, even though its employee duly receipted for the sack of furs, the receipt was signed without checking over the bundles delivered at the time, and that, when the bundles were subsequently checked over, the sack in question was missing therefrom.

The appellant is a common carrier; and when the appellee offered proof of delivery of the sack of furs in question to the appellant for transportation, and evidence tending to show its nondelivery at the place of destination, it made a prima-facie case of liability on the part of the appellant. The receipt, however, which the appellee signed and delivered to the appellant, on the other hand, made out a prima-facie case of delivery for the appellant. The appellant supported this prima-facie showing by evidence, not only that it received the sack of furs in question at Oskaloosa, but that it transported the same to Cedar Rapids. To overcome this prima-facie showing, it was incumbent upon the appellee to satisfactorily establish that it did not, in fact, receive the sack of furs for which it had acknowledged receipt in the written instrument.

The rule is well recognized that a written receipt may be explained by parol evidence. *Mounce v. Kurtz,* 101 Iowa 192; *Higley & Co. v. Burlington, C. R. & N. R. Co.,* 99 Iowa 503; *Halligan v. Keller,* 167 Iowa 72; *Butler v. Farmers Nat. Bank,* 173 Iowa 659; *Lowe Bros. & Co. v. Young,* 59 Iowa 364; *Wadsworth v. Allcott & Smith,* 6 N. Y. 64; *Gafford v. Globe Trans. & Stor. Co.,* 71 Wash. 204 (128 Pac. 228); *Hirsch v. Salem Mills Co.,* 40 Ore. 601 (67 Pac. 949).

But the burden rests upon the party so seeking to impeach his own receipt to explain or contradict its terms by a preponderance of the evidence. *McAnnulty v. Seick,* 59 Iowa 586; *Coit & Co. v. Churchill & Co.,* 61 Iowa 296; *Farmers' Co-op. Society v. German Ins. Co.,* 97 Iowa 749; *Jamison v. Estate of Jamison,* 113 Iowa 720; *Thompson v. Romack,* 174 Iowa 155.

We think that the appellee failed to impeach the recitals of the receipt by a preponderance of the evidence. In view of a

possible retrial of the cause, it would be improper for us to review the evidence of the appellee upon this question. Appellee received certain sacks of furs from the appellant on Sunday morning, and gave to appellant its written receipt for the specific sack in controversy. The evidence as to what was done with the sacks so received, or how they were handled or kept until the following Monday, or possibly Tuesday, is very meager and unsatisfactory in the record. The evidence tends to show that, when the bookkeeper checked up the slips that were given her by the employees of appellee, on either Monday or Tuesday, these slips failed to show that the sack of furs in question was then in the possession of the appellee. On the showing. made, we think that the evidence was insufficient to carry the case to the jury on the question of impeachment of the recitals of the written receipt, and that the court should have directed a verdict for the appellant.

In submitting the question to the jury, the court failed to place the proper burden of proof upon the appellee to explain or contradict the recitals of the receipt which made a prima-facie showing for the appellant.

For the error pointed out, the judgment of the district court must be, and it is,—*Reversed*.

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.