**Mary LENNON, Mother and Next Friend of Sherri Lennon, a minor, Appellee,**

v.

**John E. WALROD, Appellant.**

No. 2–57879.

Supreme Court of Iowa.

Feb. 16, 1977.

R. Fred Dumbaugh and Robert C. Nelson, Cedar Rapids, for appellant.

Johnson, Burnquist, Erb, Latham & Gibb, Fort Dodge, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

LeGRAND, Justice.

This is an action brought by Mary Lennon as mother and next friend of her minor daughter, Sherri, to establish the paternity of defendant, John E. Walrod, and to compel him to support the child, who was born out of wedlock on June 8, 1968.

The trial court found paternity had been established. No appeal was taken from this determination. The court further directed that John pay $100 per month from December, 1972, until Sherri reaches the age of 16 years. John appeals from the judgment rendered in favor of Mary Lennon for these amounts.

The sole issue raised concerns an agreement signed by Mary on May 21, 1968, releasing John from all obligation for the support of the child (who had not then been born) upon payment of $3,000.

John pled this release as a bar to the present action. Mary asserted it was not binding because it had not been judicially approved as § 675.30, The Code, requires. We affirm the trial court's finding that the release does not defeat recovery here.

The statute in question (§ 675.30) is set out in full:

"An agreement or compromise made by the mother or child or by some authorized person on their behalf with the father concerning the support of the child shall be binding upon the mother and child only when adequate provision is fully secured by payment or otherwise *and when approved by a court having jurisdiction to compel support of the child.* The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support of the child." (Emphasis supplied.)

The agreement between Mary and John was supported by substantial consideration and was performed by him. It was not, however, approved by "a court having jurisdiction to compel support of the child."

We have found no case interpreting this statute nor has any been pointed out to us. John relies on *Black Hawk County v. Cotter,* 32 Iowa 125, 127 (1871). However, this case was decided more than fifty years before § 675.30 became part of our statutory law in 1925. It affords no support for the argument advanced.

The Wisconsin Supreme Court considered a similar question in *Smazal v. Estate of Dassow,* 23 Wis.2d 336, 127 N.W.2d 234, 237 (1964). In that case, the court said that the settlement between the parents of an illegitimate child must comply with the requirements of the statute. Although there are material differences between the Wisconsin statute and ours, this statement in *Smazal* is applicable here:

"There is a sound public policy behind a statutory plan which requires that all such agreements [for the support of ille-

gitimate children] be drawn by the district attorney and approved by the court. In this manner the public interest is fully protected. This technique is the one which will best protect the illegitimate child. Compliance with the statute will prevent, on the one hand, any unreasonable imposition upon the punitive father by a conniving mother; on the other hand, it will avoid the acceptance of an improvident financial arrangement on the part of a woman who may be as naive fiscally as she had been sexually  *  *  *  We conclude that the legislature intended to make the settlement technique provided for  *  *  *  an exclusive remedy."

We believe our legislature intended that same result in enacting § 675.30. It is not only the two parents who are involved in any negotiation and settlement for the support of the child. The welfare of the child is even more important and must receive primary consideration. The public also has an interest in assuring the proper support of children.

We have expressed this view several times in divorce actions involving agreements by the parties concerning child support. *Anthony v. Anthony,* 204 N.W.2d 829, 833 (Iowa 1973); *Pappas v. Pappas,* 247 Iowa 638, 641, 75 N.W.2d 264, 266 (1956). Although not concerned with the issue now before us, *In Re Devine's Estate,* 255 Iowa 726, 731–733, 123 N.W.2d 898, 901–902 (1963) lends support to the conclusion we have reached.

Our statute provides a plan by which both parents are protected and by which the rights of the child are also safeguarded. As pointed out in § 675.5, The Code, John could have discharged his duty to support Sherri only by complying "with the terms of a judicially approved settlement."

We agree with the trial court that the agreement between Mary Lennon and John Walrod, not having been approved by a court having jurisdiction to compel support of the child as provided in § 675.30, does not bar her present action. The judgment is affirmed.

AFFIRMED.